# Richmond

## JEFFERSON HOSPITAL, INCORPORATED v. GEORGE A. VAN LEAR.

March 3, 1947.

Record No. 3159.

Present, Holt, C. J., and Hudgins, Gregory, Eggleston and Spratley, JJ.

The opinion states the case.

*Cocke, Hazlegrove & Shackelford*, for the plaintiff in error.

*Charles D. Fox* and *James N. Kincanon*, for the defendant in error.

EGGLESTON, J., delivered the opinion of the court.

George A. Van Lear, a patient at Jefferson Hospital, Incorporated, of Roanoke, while attempting to wait on himself in his room, fell and was badly injured. He sued the hospital, claiming that his injuries were proximately due to

its negligence, (1) in failing to provide him with the services of nurses, orderlies or other attendants commensurate with his known physical condition and needs, and (2) in failing to maintain the floor in his room in a reasonably safe and proper condition.

With respect to the second charge, the claim was that the floor was so highly polished as to be slippery and dangerous for a person of his age and condition to walk safely thereon. However, since the trial court held that there was not sufficient evidence to warrant the submission of the defendant's negligence to the jury on the item, we are not now concerned with it.

On the first charge the jury found a verdict in favor of the plaintiff and the trial court entered judgment thereon. Our main problem is whether the evidence on this phase of the case is sufficient to sustain the verdict.

The hospital contends that the evidence falls short of the legal requirements in two respects, namely: (1) It fails to show that the defendant, or any of its employees, was guilty of negligence, and (2) it shows that the proximate cause of the plaintiff's injuries was his own voluntary act in undertaking to attend to his needs when he knew, or ought to have known, that he was in no condition to do so.

Viewed in the light of the verdict the facts are these:

At the time of the accident Mr. Van Lear was seventy-five years of age and was employed as a registered pharmacist at a drugstore in Tazewell, Virginia. Prior to his removal to Tazewell he had lived in Roanoke for forty years.

Over a period of years cataracts had developed on both of his eyes, as a result of which the sight in the right eye had suffered a total eclipse, and that in the left eye had been considerably impaired. He was advised by his surgeon, Dr. G. M. Maxwell of Roanoke, that the cataract on his right eye should be removed.

On February 13, 1945, Mr. Van Lear came to Roanoke for the purpose and entered the Jefferson Hospital where he made arrangements, for compensation or as a pay patient, for hospital service immediately preceding the operation and

during his recuperative period following it. On the next day, February 14, the cataract was sucessfully removed from the right eye which was covered with a bandage, and he was returned to his room in the hospital.

The room to which Mr. Van Lear had been assigned had no separate bath or toilet, and he had been instructed both by Dr. Maxwell and the hospital attendants that when he desired to answer a call of nature he should ring for a nurse who in turn would dispatch to him an orderly who would attend to his needs through the use of a bedpan in his room. He was cautioned that he should not attempt, without the assistance of an orderly, to get out of bed and attend to his needs in this respect.

On the night of February 18, between nine and ten o'clock, Mr. Van Lear felt the urge of an impending bowel movement. In accordance with the instructions previously given him, he signaled for a nurse by pressing the near-by electric button which illuminated a red signal light above his door. After waiting for a period of from ten to fifteen minutes, during which there was no response to the signal, Mr. Van Lear turned off the signal light and flashed it on again, hoping thereby to attract the attention of a nurse or an orderly. No one, however, came during the further lapse of ten or fifteen minutes. In the meantime his discomfort and pain from the impending bowel movement had become acute. To use his own words, "I felt that I would have an accident, if I didn't do something."

He arose from the bed and procured the bedpan which was on a chair in his room. The door leading from his room into the corridor was open and people were passing back and forth. On previous occasions when the orderly had attended him in this situation, he (the orderly) had closed the door and hung a towel over the knob which was a signal that visitors were not welcome at the moment. Mr. Van Lear had no towel available for this purpose. Consequently, he felt some embarrassment in undertaking to use the bedpan in the room. He walked toward what he thought was a washroom in the corner of his bedroom and opened the door,

hoping that he might retire there, use the bedpan and relieve himself.

He found that the washroom or closet was too small for the intended use. He closed the door of the washroom and turned away, and as he did so his foot slipped and he fell, fracturing his hip. The hospital attendants responded quickly to his cries for help and he was given the necessary medical aid and attention.

Although the undisputed evidence is that the signal apparatus in the Van Lear room was in good working order, and that the signal light was plainly visible to the floor nurse, whose duty it was to respond to it, both at her station and along the hall, neither she nor any other attendant answered the call during the twenty or thirty minute period which Mr. Van Lear insists that the signal light was on.

The floor nurse did not claim that her failure to respond to the signal was due to her preoccupation with other and more pressing duties. She testified that at the time Mr. Van Lear fell, and shortly prior thereto, she was attending to routine duties in the chartroom from which she could have seen his signal light had it been flashed. She insists, however, that no signal was given. The verdict has, of course, settled the conflict in favor of Mr. Van Lear, who, as has been said, is equally as positive that the signal was given.

It is true that the floor nurse testified that she visited Mr. Van Lear's room only fifteen minutes before the accident, inquired of his needs, and was told by him that he needed nothing. But Mr. Van Lear denied this, and here, too, the verdict settled the conflict favorably to him.

The evidence is undisputed that as a result of the fall Mr. Van Lear suffered a permanent disability and considerable financial loss.

■ The sufficiency of the evidence to warrant a finding that the hospital was guilty of negligence gives us little trouble. As is said in 26 Am. Jur., Hospitals and Asylums, sec. 14, pp. 595, 596, the degree of care exacted of a private hospital, conducted for profit, to their patients "is such reasonable care and attention for their safety as their mental and

physical condition, if known, may require, and should be in proportion to the physical or mental ailments of the patient, rendering him unable to look after his own safety." See also, *Stuart Circle Hospital Corp.* v. *Curry*, 173 Va. 136, 3 S. E. (2d) 153, 124 A. L. R. 176, and cases there cited; Annotation, 22 A. L. R. 343; *Id.*, 39 A. L. R. 1433; *Id.*, 124 A. L. R. 187.

In the case before us the attendants of the hospital were, of course, aware of the physical condition of Mr. Van Lear. They knew the nature of his operation and his disabilities. They had been instructed that he should not be permitted to answer a call of nature without the assistance of an orderly. They knew, or should have known, that a delay in answering his call for a nurse or an orderly for a service of this character might induce him to get out of bed and attempt to wait upon himself. Indeed, they had actual notice of this, because both a nurse and an orderly testified that on previous occasions he had gotten out of bed to attend to some trivial need.

█ Clearly, it was for the jury to say whether the hospital attendants, under the circumstances, were negligent in not observing or in not answering more promptly Mr. Van Lear's call signal on the night in question.

The troublesome question presented to us, and that most seriously pressed, is whether the negligence of the hospital in failing to heed Mr. Van Lear's call and in failing to attend to his needs was the remote cause, and his own act in getting out of bed and attempting to minister to himself was the direct and proximate cause of his fall and consequent injuries.

█ A widely approved definition of proximate cause is, "that cause, which, in natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which the result would not have occurred". 38 Am. Jur., Negligence, sec. 50, p. 695. Whether an act or omission, under the particular surrounding circumstances, meets the requirements of this apparently simple definition is frequently difficult to determine.

█ A cause of an injury may be the proximate cause not-

withstanding it acted through a series of events, if the events were combined in one continuous chain through which the force of the cause operated to produce the disaster. 38 Am. Jur., Negligence, sec. 56, p. 705.

As was said in *Milwaukee, etc., R. Co.* v. *Kellogg*, 94 U. S. 469, 474, 476, 24 L. Ed. 256: " * * * The primary cause may be the proximate cause of a disaster, though it may operate through successive instruments, as an article at the end of a chain may be moved by a force applied to the other end, that force being the proximate cause of the movement, * * * .

"In the nature of things, there is in every transaction a succession of events, more or less dependent upon those preceding, and it is the province of a jury to look at this succession of events or facts, and ascertain whether they are naturally and probably connected with each other by a continuous sequence, or are dissevered by new and independent agencies, and this must be determined in view of the circumstances existing at the time."

See also, *Spence* v. *American Oil Co.*, 171 Va. 62, 73, 74, 197 S. E. 468, 472, 473, 118 A. L. R. 1120.

"The general rule is that whoever acts negligently is answerable for all the consequences that may ensue in the ordinary course of events, even though such consequences are immediately and directly brought about by an intervening cause, if such intervening cause was set in motion by the original wrongdoer." 38 Am. Jur., Negligence, sec. 69, p. 726. See also, *Pfaehler* v. *Ten Cent Taxi Co.*, 198 S. C. 476, 18 S. E. (2d) 331, 335.

██ In other words, an intervening cause does not operate to exempt a defendant from liability if that cause is put into operation by the defendant's wrongful act or omission.

The principle is thus expressed in Restatement of the Law of Torts, Vol. 2, sec. 443, p. 1189: "An intervening act of a human being or animal which is a normal response to the stimulus of a situation created by the actor's negligent conduct, is not a superseding cause of harm to another which

the actor's conduct is a substantial factor in bringing about."

■ Tested by these principles we think the jury was fully warranted in finding that Mr. Van Lear's action in attempting to attend to his needs, under the circumstances, was not a superseding cause of his injury, but was merely a circumstance in a continuous sequence of events—that is, a connecting link between the negligence of the hospital and his injury. The intervening act of Mr. Van Lear was put into operation by the hospital's wrongful act or omission. His act was "a normal response to the stimulus" of the situation created by the hospital's negligent conduct. When the hospital attendants failed to respond to his call and minister to his needs, it was both natural and probable that he would undertake to relieve himself of the painful and embarrassing situation in which he had been placed by the primary act or omission of the hospital.

To state the matter succinctly, Mr. Van Lear's undertaking to wait upon himself was the natural and probable consequence of the failure of the employees of the hospital to attend to him.

■ Moreover, as has been said, the hospital attendants knew, or should have known, that as a consequence of their neglect of his needs, Mr. Van Lear probably would undertake to get out of bed and wait on himself. Both the nurse and an orderly said that he had done so on other occasions.

■ An intervening cause will not be deemed to have broken the causal connection if the intervening cause was foreseen or reasonably might have been foreseen by the wrongdoer. 38 Am. Jur., Negligence, sec. 70, pp. 726, 727; Shearman & Redfield on Negligence, Rev. Ed., Vol. 1, sec. 38, p. 102; *Hines* v. *Garrett*, 131 Va. 125, 137, 138, 108 S. E. 690; *Spence* v. *American Oil Co.*, *supra* (171 Va., at pages 74, 75, 197 S. E., at page 473).

The case before us is easily distinguishable from that of *Chesapeake, etc., R. Co.* v. *Wills*, 111 Va. 32, 68 S. E. 395, 32 L. R. A. (N. S) 280, relied on by the hospital. In that

case a passenger, through the negligence of an employee of the carrier, boarded a train going in the wrong direction. After the train had begun to move he discovered his mistake, attempted to get off and was injured. We held that the passenger's own conduct in attempting to alight from the train was the sole proximate cause of his injury.*

There the conduct of the passenger in attempting to alight from the train was entirely voluntary on his part.

In the case before us Mr. Van Lear's conduct was involuntary. He was driven by pain and natural impulse to get relief by waiting upon himself. His situation was akin to that in which a person, put in peril by the negligent act of another, and in the instinctive effort to escape therefrom suffers injury. In this latter situation the negligent act is deemed the proximate cause of the injury. 38 Am. Jur., Negligence, sec. 77, pp. 736, 737.

Whether Mr. Van Lear was guilty of contributory negligence, under the circumstances, in getting out of bed and undertaking to wait upon himself without the assistance of an attendant was submitted to the jury and resolved in his favor. No point is here made that this finding was unwarranted by the evidence.

Complaint is made of the action of the trial court in amending an instruction offered by the hospital by inserting a provision which in effect told the jury that in determining whether Mr. Van Lear was guilty of contributory negligence they should take into consideration whether "the urgency of his condition" and his need for "immediate relief" justified him in leaving his bed and attempting to wait upon himself. It is argued that the urgency of the situation was not a proper element for the consideration of the jury.

We do not agree with this contention. The urgency of the situation in which Mr. Van Lear was placed was a very material circumstance in determining whether he acted as a reasonably prudent man. For one in his physical condi-

*Cf. *Houston* v. *Strickland*, 184 Va. 994, 37 S. E. (2d) 64, 165 A. L. R. 537, where an intoxicated passenger was negligently ejected from a bus and shortly thereafter, while walking along the highway, was struck and killed by a passing automobile. A finding that a proximate cause of the passenger's death was the act of the bus driver in ejecting him from the bus was sustained.

tion, recuperating from an operation, with impaired eyesight, to get up out of bed, unattended, to satisfy a trivial want, is quite different from doing so to answer an urgent call of nature. And yet without the modification the submitted instruction placed both in the same category. It was for the jury to say, under all of the circumstances of the case, whether Mr. Van Lear acted as a reasonably prudent person.

We find no error in the proceedings below and the judgment is

*Affirmed.*