Present: Carrico, C.J., Compton, Stephenson, Lacy, Hassell, and
 Koontz, JJ., and Whiting, Senior Justice

SHIRLEY DICKERSON
                          OPINION BY JUSTICE ROSCOE B. STEPHENSON, JR.
v. Record No. 961531

                                    April 18, 1997
NASROLLAH FATEHI, M.D., ET AL.

                FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
                          Thomas V. Forehand, Judge


     In this medical malpractice action, the trial court, relying

solely upon the pleadings and certain pretrial discovery

material, granted summary judgment in favor of a physician and

two nurses.  The court ruled, <u>inter</u> <u>alia</u>, that expert testimony

was necessary to establish the appropriate standards of care and

breaches thereof, and the principal issue in this appeal is

whether that ruling was erroneous.

     Shirley Dickerson filed this action against Nasrollah

Fatehi, M.D., a neurosurgeon, and his professional entity,

Atlantic Neurosurgery, P.C. (collectively, Fatehi), and against

Rachel Jacobs, R.N., and Millicent P. Spruill, ORT.[1]  Dickerson

alleged that, on February 27, 1989, she was admitted to

Chesapeake General Hospital for neck surgery to be performed by

Fatehi.  The next day, Fatehi, assisted by Jacobs, the

circulating nurse, and by Spruill, the surgical technician who

acted as the scrub nurse, performed an anterior cervical

diskectomy.

_____

     [1]Dickerson also filed this action against Chesapeake General
Hospital.  In a separate action which was consolidated with this
suit, Dickerson sued Edward Habeeb, M.D., and his professional
entity, Orthopaedic Surgeons, Ltd. (collectively, Habeeb).  On
Dickerson's motion, however, Habeeb and the Hospital were
nonsuited.

Dickerson further alleged that, during the course of the surgery, Fatehi "used a blunt tip 18 gauge hypodermic needle, including [a] plastic attachment to the syringe, as a metallic marker [which] . . . was intended to be removed prior to closure of the operative site."  Fatehi, however, negligently "failed to remove [the] hypodermic needle" from Dickerson's neck at the close of surgery, and Jacobs and Spruill, in violation of their duty of care, negligently failed "to maintain a proper needle count . . . [to] ensure the removal of the needle" after surgery.

Following the surgery, Dickerson allegedly experienced "severe pain . . . [in] her right arm, hand and neck."  Fatehi referred her to Dr. Edward Habeeb, an orthopedic surgeon.  Habeeb ordered x-rays of Dickerson's neck and shoulder, but was unable to determine the cause of her pain.  He referred her to Fatehi for therapy.

Approximately 20 months after the surgery, Dr. Thomas Queen, a general surgeon, discovered and removed the needle, including the plastic attachment to the syringe, from Dickerson's neck. Dickerson alleged that the negligence of Fatehi, Jacobs, and Spruill (collectively, the Defendants) was a proximate cause of her injuries.

Responding to the Defendants' pretrial discovery requests that Dickerson identify the expert witnesses she expected to call at trial, Dickerson named only a psychiatrist/neurologist and a radiologist.  Dickerson had not named any other expert witnesses

when the court-ordered discovery cut-off date arrived.

The Defendants moved for summary judgment on the ground that the two experts named by Dickerson were not qualified to testify on the appropriate standards of care.[2]  The trial court agreed and granted summary judgment in favor of the Defendants.  At the same time, the trial court rejected Dickerson's contention that the doctrine of res ipsa loquitur applied.  The court reasoned that Dickerson's pleadings and "the undisputed facts" showed that the needle marker "was not in the exclusive control of any one defendant."

Dickerson contends, on appeal as she did in the trial court, that, based upon the facts shown by her pleadings and the Defendants' admissions, expert testimony is not necessary to establish the appropriate standards of care and breaches thereof.  Dickerson asserts that "whether a reasonably prudent neurosurgeon . . . should account for and remove a hypodermic needle from a patient's body before closing the operative wound is within the range of common experience of a jury."  Similarly, Dickerson also asserts that "whether a reasonably prudent

---

[2]The Defendants relied upon Code § 8.01-581.20 regarding the requisite knowledge, skill, and experience that a proffered witness must have in order to qualify as an expert witness on the appropriate standard of care.  Code § 8.01-581.20, however, does not require a plaintiff to present expert testimony in all medical malpractice actions, Beverly Enterprises v. Nichols, 247 Va. 264, 269, 441 S.E.2d 1, 4 (1994), and, given our decision in the present case, we do not reach the question whether the proffered witnesses were qualified to testify as experts on the standard of care.

circulating nurse and scrub nurse . . . [made] and report[ed] an accurate account of all needles . . . used during the surgical procedure . . . [also is a matter] within the common knowledge and experience of a jury."

In almost all medical malpractice cases, expert testimony is necessary to assist a jury in determining a health care provider's appropriate standard of care and whether there has been a deviation from that standard. Raines v. Lutz, 231 Va. 110, 113, 341 S.E.2d 194, 196 (1986); Bly v. Rhoads, 216 Va. 645, 653, 222 S.E.2d 783, 789 (1976). In certain rare cases, however, when the alleged negligent acts or omissions clearly lie within the range of a jury's common knowledge and experience, expert testimony is unnecessary. Beverly Enterprises v. Nichols, 247 Va. 264, 267, 441 S.E.2d 1, 3 (1994); accord Jefferson Hospital, Inc. v. Van Lear, 186 Va. 74, 41 S.E.2d 441 (1947).

In considering a motion for summary judgment, a court must adopt those inferences from the facts that are most favorable to the nonmoving party, unless the inferences are forced, strained, or contrary to reason. Carson v. LeBlanc, 245 Va. 135, 139-40, 427 S.E.2d 189, 192 (1993). "Summary judgment shall not be entered if any material fact is genuinely in dispute." Rule 3:18.

This case did not go to trial; consequently, the record on appeal is quite limited. In addition to Dickerson's pleadings, the record discloses that Fatehi's attorney conceded in argument

before the trial court that "anybody . . . without regard to any medical training would be able to say that unless the object left in the patient has some therapeutic value, you don't leave a foreign object in the body."

Furthermore, Dickerson submitted the following request for admission to Fatehi:

> 15. Admit that it was your responsibility as surgeon to remove after surgery the 18 gauge blunt tip hypodermic needle placed in . . . Dickerson's neck during anterior cervical diskectomy surgery . . . .

Fatehi responded as follows:

> 15. Denied. It was the obligation of Dr. Fatehi to remove the needle, as he did, prior to the removal of the disk. The request implies the needle was to be removed only after the surgery was performed. Dr. Fatehi relies on the counts of the hospital's OR Technician and circulating nurse at the end of the operation and prior to closing the wound, which counts indicated <u>all</u> needles were accounted for and none was in the surgical wound site and he believed that the counts necessarily included the needle.

In the present case, based upon the record before us, we are of opinion that, if the facts alleged and admitted by Fatehi were presented to a jury, the jurors, absent expert testimony, reasonably could determine, by calling upon their common knowledge and experience, whether Fatehi was negligent and whether his negligence was a proximate cause of Dickerson's injuries. Therefore, the trial court erred in ruling that expert testimony was necessary to establish the standard of care.

With respect to Jacobs and Spruill, we conclude that the record has not been developed sufficiently to enable either the

trial court or this Court to determine that the alleged negligence does not lie within a jury's common knowledge and experience so that expert testimony is necessary. Therefore, the trial court acted prematurely in entering summary judgment in favor of Jacobs and Spruill. Likewise, the record has not been developed sufficiently to enable either the trial court or this Court to determine whether the doctrine of res ipsa loquitur is applicable. See Easterling v. Walton, 208 Va. 214, 216–17, 156 S.E.2d 787, 789–90 (1967) (doctrine applies where means or instrumentality causing injury is in exclusive possession and control of person charged with negligence).

Accordingly, we will reverse the trial court's judgment and remand the case for further proceedings consistent with this opinion.[3]

Reversed and remanded.

---

[3]We need not consider whether the trial court abused its discretion in refusing to permit Dickerson to supplement her discovery answers by naming additional expert witnesses because the case will be remanded for further proceedings. Upon remand, the court should establish a new date for the completion of discovery, and, therefore, the issue is moot.