132

## CIRCUIT COURT OF FAIRFAX COUNTY

Beatrice F. Beckner

v.

Friendly Ice Cream
Corp., Inc.

June 11, 2004

Case No. (Law) 219047

BY JUDGE R. TERRENCE NEY

This matter came before the Court on June 4, 2004, on Defendant Friendly Ice Cream Corporation's (" Friendly's" ) Motion for Summary Judgment against Plaintiff Beatrice F. Beckner based on the latter's alleged non-compliance with the notice requirements set forth in the parties' Lease Agreement.

*Facts*

The underlying case arises out of a commercial lease dispute in which Beckner, the Lessor of a certain piece of commercial property, is seeking to eject Defendant Friendly's, the Lessee, from a restaurant situated on Beckner's property. Friendly's built the restaurant in 1975 and has maintained it up through the present time.

On February 21, 1975, the parties entered into a Lease for a term of fifteen years, with five separate five-year option periods. The Lease provides for a fixed monthly base rent payment plus an annual "Percentage Rent" payment based on a percentage of the restaurant's gross sales. The Lease is currently in the third option period and provides for a base rent in the amount of $1,105.05 monthly payment, plus an annual payment of 2% of the annual gross sales exceeding $275,000 (the "Percentage Rent" ). The base rent is due on a

monthly basis and the Percentage Rent is due once a year after the close of the lease year. Paragraph 9 of the Percentage Rent Rider of the Lease allows Friendly's sixty days after the close of the lease year to calculate and pay the Percentage Rent. *See The Percentage Rent Rider of the Lease Agreement,* attached as Exhibit 1 to the Motion for Judgment (MFJ).

In October 2003, Friendly's failed to pay Beckner the Percentage Rent for the preceding fiscal year, i.e., June 2002 through June 30, 2003. Beckner sent an original notice of default to Friendly's Real Estate Department[1] and a second notice of default to Friendly's Legal Department[2] pursuant to Section 24(A) of the Lease.[3] On October 20, 2003, Friendly's received both notices. MFJ & 17.

On November 10, 2003, after not receiving any response or payment from Friendly's, Beckner, through counsel, sent Friendly's a Notice of Termination pursuant to Section 17 of the Lease[4] and the Appendix thereto.[5] In the notice, Beckner informed Friendly's of her intention to terminate the Lease due to Friendly's failure to pay the Percentage Rent retroactively to March 11, 2002,[6]

---

[1] The notice sent to Friendly's Real Estate Department stated, "Dear Sirs/I have not received the percentage rent since March 2002. Please pay it."

[2] See MFJ & 16. The second notice sent to Friendly's Legal Department states, "Dear Sirs/I have not received *my* percentage rent since March 2002," but omits the text "Please pay it."

[3] Section 24(A) of the Lease, attached as Exhibit One to the Motion for Judgment for Unlawful Detainer, provides that "all notices required or permitted hereunder shall be in writing and shall ... be deemed to have been given when deposited in the United States mail, postage prepaid, by registered or certified mail (with or without return receipt) addressed to the Tenant as follows: 1855 Boston Road, Wilbraham, Massachusetts 01095, Attention: REAL ESTATE DEPARTMENT, with a duplicate copy addressed as above and marked "Attention: Legal Department."

[4] Section 17 of the Lease provides that, before Beckner can terminate the Lease, she must provide Friendly's with notice of the alleged default along with an opportunity to cure. Under Section 17, if payment is not received within ten days following receipt of said notices, Beckner is entitled to terminate the Lease.

[5] Inconsistent with Section 17 of the Lease, in the event of default, the Appendix provides Friendly with a fourteen-day period to cure any default in the payment of the rent following the receipt of notices of default.

[6] At the time the events giving rise to this action occurred, the parties had recently concluded a separate suit involving the setting aside of an amendment to the Lease which substituted a flat monthly rent for Percentage Rent, *Beatrice F. Beckner v. Friendly Ice Cream Corp. et al. (" Beckner I" ),* In Chancery No. 177432. On April 18, 2003, the Court rescinded the Amendment on the grounds of undue influence, thus returning the parties to the *status quo* under the original Lease. Thus, Friendly's obligation to pay Percentage Rent was once again applicable from the date of the amendment, March 11, 2002, through the end of Friendly's fiscal year ending June 30, 2002.

and its failure to pay Percentage Rent for the fiscal year running from July 1, 2002, through June 30, 2003.[7]

On November 12, 2003, Friendly's received Beckner's Notice of Termination. Upon receipt, Friendly's attempted to tender the overdue Percentage Rent to Beckner, but Beckner refused to accept it. MFJ & 21.

On November 26, 2003, Beckner filed a Motion for Judgment for Unlawful Detainer against Friendly's seeking to eject Friendly's from the property and requesting a money judgment for all amounts due under the Lease, namely the Percentage Rent for the preceding fiscal year, i.e., July 1, 2002, through June 30, 2003, as well as damages and any appropriate post-termination damages. MFJ && 14-16.

With respect to the unpaid Percentage Rent between March 11, 2002, and June 30, 2002, referenced in Beckner's notices of default, Beckner admitted in her Motion for Judgment that the notices sent to Friendly's "mistakenly asserted" that Beckner had not received Percentage Rent since March 2002, when, in fact, she was owed Percentage Rent only from July 2002. *Id.* at & 16.

On May 11, 2004, Friendly's filed a Motion for Summary Judgment, asserting that because there are no facts in dispute regarding Beckner's failure to comply with the notice provisions of the Lease, the unlawful detainer claim is defective as a matter of law.

*Analysis*

It is well settled in Virginia that summary judgment is proper only where there are no material facts in dispute and the moving party is entitled to judgment in its favor based on the pleadings, orders, and admissions in the file. Rule 3:18 of the Rules of the Supreme Court of Virginia; *see also Dickerson v. Fatehi*, 253 Va. 324, 484 S.E.2d 880 (1997). Neither party suggests that any material facts are in dispute.

In support of its Motion for Summary Judgment, Friendly's argues that Beckner's undisputed non-compliance with the notice provisions of the Lease with respect to default prior to seeking termination of the Lease precludes her action for unlawful detainer against Friendly's as a matter of law.

Specifically, Friendly's argues that Beckner failed to (1) send Friendly's an original and *duplicate copy*, i.e., an identical or exact copy,[8] of the notice of

---

[7] Pursuant to Section 9 of the Percentage Rider of the Lease, Friendly's had until August 30, 2003, sixty days after the close of the lease period ending June 30, 2003, to calculate and pay the Percentage Rent.

[8] See *Webster's II New College Dictionary*, 351, which defines "duplicate copy" as a copy that is "copied identically from the original."

default, as Section 17 of the Lease unambiguously requires;[9] (2) make a demand for payment as required by law;[10] and (3) accurately specify the period for which Percentage Rent was due. It is worth noting that on February 13, 2004, Friendly's raised the same arguments on Demurrer, which the Court overruled.

In seeking strict compliance with the notice provisions, Friendly's argues that, to the extent that Beckner's own claim rests on the notion that requirements of the Lease should be strictly adhered to and enforced, namely, the timely payment of rent, Friendly's asserts it would be "inequitable" [11] for the Court to not strictly enforce the notice provisions of the Lease against Beckner. *See Wilson v. Remax Gateway, L.L.C.*, 60 Va. Cir. 248 (Fairfax County 2002) (where parties entered into a contract incorporating a statutory notice provision requiring notice to be hand-delivered or mailed, notice by fax held to be insufficient).

In response, Beckner argues that, notwithstanding the importance of the academic definition of the term "duplicate," more important is the *purpose* of the notice provision,[12] namely, to ensure that actual notice is received. Beckner asserts that the two *original* notices, although contextually different, are nonetheless "duplicate" copies of each other "within the purpose, context, and meaning of the Lease." See Response to Defendant's Request for Admission # 1. Specifically, Beckner argues that the clear purpose of the notice provision contained in the Lease is that the tenant receives *actual notice* of default, which occurred here. To interpret the notice provision otherwise would be to improperly elevate form over substance and thus completely

---

[9] In the event the Court should find the term "duplicate copy" to be ambiguous, Friendly's argues that such terms are typically construed against the drafter of the contract/lease, namely the Landlord, or construed in a manner that will avoid forfeiture. In response, Beckner argues that, although ambiguous terms are typically construed against the lessor, the party traditionally responsible preparing the lease agreement, here the lease was in fact drafted by the *tenant*. As such, there is no automatic presumption in favor of the tenant, but only against the drafter. Thus, doubtful provisions should be construed against the party preparing the lease, namely Friendly's. *See* Michie's Jurisprudence, *Landlord and Tenant*, § 9; *see also Moore v. Johnson Service Co.*, 158 W. Va. 808, 219 S.E.2d 315 (1975) (where lease prepared by tenant, lease construed against the draftsman). Lastly, Beckner notes that here, the Lease expressly provides that there should be no construction for or against either party by virtue of draftsmanship. See Paragraph 24(F) of the Lease.

[10] *See Johnston v. Hargrove*, 81 Va. 118, 121 (1885) (" It is an ancient rule of the common law that, before the lessor can exercise a stipulated right of re-entry for breach of covenant to pay rent, he must make an *actual demand* upon the tenant for payment thereof, unless, by special agreement between the parties, the requirement of demand has been dispensed with." ).

[11] The instant action, however, was not filed in equity.

[12] *Krikorian v. Dailey*, 171 Va. 16, 24, 197 S.E. 442, 446 (1938).

ignore the plain intent and purpose of the provision. Notice, generally, is any knowledge, however acquired, which is sufficient to put a party on inquiry. *See Union Cent. Life Ins. Co. v. Pollard*, 94 Va. 146, 153, 26 S.E. 421, 422 (1896) (" If the notice be such that the defendant cannot mistake its object, it will be sufficient." ) The concept that "notice which actually intended the purpose is good notice" is recognized in other areas of Virginia jurisprudence. For example, service of process which timely reaches the intended party is good, even though not formally served or accepted, unless specifically excepted by the statute. *See* Va. Code Ann. § 8.01-288; *see also Hilton v. Quantum Communications Group*, 59 Va. Cir. 163 (Fairfax County 2002), *citing* Va. Code Ann. § 8.01-288 (" Under Virginia law, actual notice of the proceedings serves to cure any defect in service." ).

As a preliminary matter, the Court notes that in determining whether to apply a very strict application on the one hand, or, on the other hand, a more common sense application of the terms of the Lease, whichever construction the Court deems appropriate, it shall apply uniformly to both parties.

In addressing forfeiture actions under a lease, the Supreme Court of Virginia has made clear that "every required formality must be strictly observed" before a forfeiture will be allowed,[13] as the law disfavors forfeitures. *Davis v. Wickline*, 205 Va. 166, 169, 135 S.E.2d 812, 814 (1964) (" breach of covenant to sustain forfeiture is construed strictly against forfeiture." ); *Johnston v. Hargrove*, 81 Va. 118, 121 (1885) (" forfeitures are never favored in law." )

Applying this principle here, and strictly observing "every required formality" of the terms of the Lease between Beckner and Friendly's, it is clear that neither party has fully complied with the provisions of the Lease.

First, with respect to Friendly's noncompliance, it is clear that it not only failed to calculate and pay the Percentage Rent within sixty days of the close of the 2003 lease period pursuant to the Percentage Rent Rider, but it also failed to tender the overdue Percentage Rent within either cure period provided under the Lease.[14]

---

[13] *Johnston v. Hargrove*, 81 Va. 118, 121 (1885).

[14] See *supra*. With respect to the cure period applicable to a default in payment of Percentage Rent, Friendly's argues that under the Lease, it is entitled to a sixty-day *cure-period* as opposed to a ten or fourteen-day cure period. *See Defendant's Post-Hearing Memorandum in Support of Motion for Summary Judgment Against Plaintiff.* The Court rejects the Defendant's interpretation of the Lease Agreement. A careful reading of Sections 17 and 24(A) of the Lease, in conjunction with the Appendix and Paragraph 9 of the Percentage Rider, indicates that, in the event of default with respect to payment of rent, whether it be base rent or Percentage Rent, Friendly's has ten days under Section 17 or fourteen days under the Appendix, after receipt of a notice of default, to cure the default or be subject to termination of the Lease. Nowhere in the

Second, with respect to Beckner's non-compliance, it is similarly clear that the notices of default sent to Friendly's Real Estate and Legal Departments do not comply with Sections 17 and 24(A) of the Lease. The notice of default sent to Friendly's Legal Department cannot be characterized as a "duplicate copy" within the plain meaning of the term as used in Section 24(A), because it plainly differs from the notice sent to Friendly's Real Estate Department. See *supra*.

In addition, neither notice accurately defines the period for which Percentage Rent was due, namely, for the preceding fiscal year running from July 1, 2002, through June 30, 2003. See MFJ & 16.

In sum, a strict application of the notice provisions contained in Sections 17 and 24(A) of the Lease renders Beckner's unlawful detainer action against Friendly's untenable, notwithstanding Friendly's failure to timely pay Percentage Rent for the 2003 fiscal year, as the notice requirements with respect to default are *express conditions precedent* to seeking termination of the Lease. Absent proper and adequate notice to Friendly's in compliance with the Lease, Beckner is without authority to terminate the Lease or proceed with her unlawful detainer action.

Even if the Court were to more loosely construe the terms of the Lease, the result does not change. If Beckner's failure to strictly comply with the notice provisions would not necessarily preclude her from seeking termination of the Lease, as Friendly's plainly had notice, the Friendly's late tender of the overdue Percentage Rent, just one day after receiving Beckner's Notice of Termination and eight days after the cure period had expired, should not leave it subject to termination of its Lease with Beckner, especially so, given the nature of calculating Percentage Rent[15] and Friendly's twenty-seven-year history of otherwise timely rent payments.

In sum, whether the Court applies a strict or loose construction to the terms of the Lease, the result is the same. In strictly enforcing the terms of the contract as to both parties, Beckner failed to comply with the notice provisions prior to seeking termination of the Lease. In loosely applying the terms of the Lease, Friendly's one-time failure to timely pay Percentage Rent and subsequent eight-day delay in attempting to cure its default does not warrant the drastic remedy of forfeiture of its restaurant and property. *See Johnston v. Hargrove*, 81 Va. 118, 121-22 (1885), where the Court held that "a clause for

---

Lease does a provision allow for a sixty-day *cure period* with respect to a default in Percentage Rent as suggested by Friendly's.

[15] See, *supra*. The language of the Lease makes clear that time is *not* of the essence with respect to Friendly's payment of Percentage Rent. Rather, the parties clearly contemplated the difficulties in calculating Percentage Rent, as is evident from the built-in audit system in the Lease and accompanying Percentage Rent Rider.

re-entry for non-payment of rent is in general considered as a mere security for the rent and that a forfeiture will not be enforced, although demand for the rent be made; provided, the tenant satisfies the rent due, and compensates the landlord for any damages he may have sustained in consequence of the former's default."

## Conclusion

For these reasons, the Court finds that Summary Judgment in favor of the Defendant is appropriate. It makes little sense to release Beckner from the strict requirements of the notice provisions, as Beckner suggests, while holding Friendly's strictly to a fourteen-day cure period. The strict construction that applies to one applies to all.[16]

## Order

This matter came before the Court on June 4, 2004, pursuant to Defendant Friendly Ice Cream Corporation's Motion for Summary Judgment. For the reasons stated in this Court's opinion letter dated June 11, 2004, which is attached hereto and made a part hereof, it is hereby ordered that Defendant's Motion for Summary Judgment is granted. The Court notes the Plaintiff's exceptions to this Order.

---

[16] As this opinion was being issued, the Court was advised of the Supreme Court of Virginia's opinion in *Friendly Ice Cream Corp. et al. v. Beckner*, 268 Va. 23, 597 S.E.2d 34 (2004), wherein the Court reversed the trial court's decision rendered in *Beckner I*. As that decision will not be final until that Court issues its mandate, this case, having neither been stayed nor yet mooted, remains on this Court's docket and is thus ripe for decision.