Present:  All the Justices

LISA COSTON
                    OPINION BY CHIEF JUSTICE LEROY R. HASSELL, SR.
v.  Record No. 062449                January 11, 2008

BIO-MEDICAL APPLICATIONS OF VIRGINIA, INC.,
d/b/a TIDEWATER RENAL DIALYSIS CENTER

        FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
                    Norman A. Thomas, Judge

                                I.

    In this appeal of a judgment in favor of a defendant in a

medical negligence case, we consider whether the plaintiff was

required to present expert testimony to establish that the

defendant health care provider breached the applicable

standards of care by placing the plaintiff in a defective

chair.

                                II.

    Plaintiff, Lisa M. Coston, filed her motion for judgment

against Bio-Medical Applications of Virginia, Inc.  Coston

alleged that on April 8, 2002, she received dialysis treatment

from a facility that the defendant operated called the

Tidewater Renal Dialysis Center in Norfolk.

    Plaintiff further alleged that while she was receiving

her dialysis treatment, she was injured when a chair in which

she was seated "failed[,] causing her to fall and strike the

ground."  Continuing, plaintiff alleged that despite the

chair's defective condition, the defendant's employees placed

her back in the chair, "which failed again[,] causing her to strike the ground a second time."

Plaintiff also alleged in her motion for judgment that the defendant health care provider breached the applicable standard of care owed to her as a result of the defendant's "false, misleading, reckless, negligent, careless and wrongful conduct, including acts of commission and omission, all of which fell below a reasonable standard of care for health care providers in their specialty practicing in Virginia as herein enumerated, [plaintiff] has been severely and permanently injured . . . ." In its grounds of defense, the defendant denied that it breached any duty owed to the plaintiff.

The circuit court entered a pretrial order that required the plaintiff to identify her expert witnesses on or before June 9, 2005. Plaintiff failed to identify any expert witness who would testify about the applicable standards of care owed by the defendant to the plaintiff and deviations from those standards. Subsequently, the defendant filed a motion for summary judgment and asserted that the plaintiff could not establish a prima facie case of medical negligence because she failed to identify any expert witnesses who would testify about the applicable standards of care.

During the hearing on the motion for summary judgment, the plaintiff requested, and was granted, a voluntary nonsuit

2

after the case had been submitted to the circuit court for decision. This Court granted the defendant's appeal, and we held that the circuit court erred in granting the plaintiff's motion for a nonsuit because the case had been submitted to the court for decision. This Court reversed the judgment of the circuit court and remanded the case so that the circuit court could rule on the defendant's motion for summary judgment. Bio-Medical Applications of Virginia, Inc. v. Coston, 272 Va. 489, 495, 634 S.E.2d 349, 352 (2006).

Upon remand, the circuit court held that the plaintiff was required to present expert testimony to establish the applicable standards of care and any deviations therefrom, and the court entered summary judgment on behalf of the defendant because the plaintiff had not identified an expert witness who would render such testimony. The plaintiff appeals.

### III.

The plaintiff argues that the circuit court erred in granting the defendant's motion for summary judgment. The plaintiff contends that she was not required to establish the applicable standards of care and deviations therefrom with expert testimony because the issue whether the defendant was negligent by placing the plaintiff in a defective chair falls within the common knowledge and experience of a jury.

3

Responding, the defendant asserts that plaintiff may not challenge the circuit court's ruling that her failure to designate an expert witness on the standards of care required the dismissal of her medical negligence action because she failed to assign cross-error to that ruling in the first appeal to this Court. Continuing, the defendant argues that even if the plaintiff may assert her assignment of error in this appeal, she was required to produce expert testimony to establish the applicable standards of care and any deviations from those standards. We disagree with the defendant's arguments.

Contrary to the defendant's assertions, the plaintiff could not have assigned as cross-error in the first appeal the circuit court's ruling that is the subject of the present appeal. As we have already noted, in the first appeal the sole issue before this Court was whether the circuit court erred by granting the plaintiff a nonsuit. Coston was not required to assign cross-error in the prior appeal because in the former proceeding in the circuit court, that court did not grant the defendant's motion for summary judgment. This Court remanded this case in the first appeal and directed the circuit court upon remand to rule on the defendant's motion for summary judgment that is the subject of this appeal. Bio-

4

Medical Applications of Virginia, 272 Va. at 495, 634 S.E.2d at 352.

We have stated on many occasions that issues involving medical negligence often fall beyond the realm of the common knowledge and experience of a lay jury, and, therefore, in most instances expert testimony is required to assist a jury. Expert testimony is usually necessary to establish the applicable standards of care, a deviation from those standards of care, and that such deviation was a proximate cause of a plaintiff's damages. Perdieu v. Blackstone Family Practice Center, Inc., 264 Va. 408, 420, 568 S.E.2d 703, 710 (2002); Beverly Enterprises-Virginia, Inc. v. Nichols, 247 Va. 264, 267, 441 S.E.2d 1, 3 (1994); Raines v. Lutz, 231 Va. 110, 113, 341 S.E.2d 194, 196 (1986); Bly v. Rhoads, 216 Va. 645, 653, 222 S.E.2d 783, 789 (1976).

We have held, however, that in certain rare circumstances, expert testimony is not necessary in a medical negligence case because the alleged acts of negligence clearly lie within the range of the jury's common knowledge and experience. For example, in Beverly Enterprises, we affirmed a circuit court's judgment confirming a jury verdict in favor of a plaintiff in a medical negligence action even though the plaintiff did not produce expert testimony. 247 Va. at 270, 441 S.E.2d at 3-4.

In that case, Blanche Nichols was diagnosed with Alzheimer's disease.  She could not care for herself, and she was unable to eat unassisted.  She was admitted to a nursing home, and an administrator at the home was informed that Nichols was unable to eat unassisted.  Nichols' sons also informed the administrator of prior incidents when Nichols had choked while eating.  Id. at 265-66, 441 S.E.2d at 2.

Employees of the nursing home, on at least two occasions, delivered food to Nichols, but no one assisted her with her food.  Even though the nursing home personnel knew that Nichols "needed to be spoon fed" and that someone "had to keep an eye" on her, the employees failed to assist her and Nichols died when food obstructed a portion of her air passage and lodged in her windpipe.  Id. at 266-67, 441 S.E.2d at 2-3.

We held that the plaintiff was not required to present expert testimony to establish a prima facie case of medical negligence because "the question whether a reasonably prudent nursing home would permit its employees to leave a tray of food with an unattended patient who had a history of choking and who was unable to eat without assistance is certainly within the common knowledge and experience of a jury."  Id. at 269, 441 S.E.2d at 4.

In Dickerson v. Fatehi, 253 Va. 324, 484 S.E.2d 880 (1997), we also considered whether expert testimony was

6

necessary to establish the appropriate standards of care and breaches thereof in a medical negligence case. In Dickerson, the plaintiff alleged that during the course of surgery, a physician used a blunt tip hypodermic needle, including a plastic attachment to the syringe, and that the physician negligently failed to remove the hypodermic needle from her neck at the conclusion of the procedure. After the surgery, Dickerson experienced severe pain in her right arm, hand, and neck. Approximately 20 months after the surgery, another surgeon discovered and removed the needle and plastic attachment from Dickerson's neck. Id. at 326, 484 S.E.2d at 881.

Dickerson filed a motion for judgment against certain health care providers. She asserted that based upon the facts alleged in her pleadings and the defendant's admissions, expert testimony was not necessary to establish the appropriate standards of care and breaches thereof. Id. at 327, 484 S.E.2d at 881. We held that if the facts alleged by the plaintiff and admitted by the doctor were presented to a jury, the jurors,

> "absent expert testimony, reasonably could
> determine, by calling upon their common knowledge
> and experience, whether [the doctor] was negligent
> and whether his negligence was a proximate cause of
> Dickerson's injuries. Therefore, the trial court
> erred in ruling that expert testimony was necessary
> to establish the standard of care."

7

Id. at 328, 484 S.E.2d at 882.

We also note that in Jefferson Hospital, Inc. v. Van Lear, 186 Va. 74, 76-77, 84, 41 S.E.2d 441, 441-42, 445 (1947), we affirmed the judgment of a circuit court confirming a jury verdict in favor of a plaintiff in a medical negligence action without the presentation of expert testimony. In Jefferson Hospital, the plaintiff fell and fractured his hip while trying to walk to a bathroom. Even though the plaintiff had utilized a device that activated a signal light plainly visible to the floor nurse, neither the nurse nor any other attendant responded to his call during the 20 or 30 minute period that the signal light was activated. We held that the evidence was sufficient to support a finding of negligence without expert testimony because the hospital personnel were aware of the plaintiff's physical condition and they knew, or should have known, that a delay in answering his call for assistance might induce him to leave his bed and attempt to use the bathroom without assistance. Id. at 78-80, 41 S.E.2d at 442-43.

We hold that in the present case, just as in Dickerson, Beverly Enterprises, and Jefferson Hospital, the plaintiff's allegations that she was injured after she was placed in a defective chair, if proven at trial, would be sufficient to

establish a prima facie case of medical negligence against the defendant without the necessity of expert testimony. Based upon these allegations, a jury could find that defendant's employees placed the plaintiff in a defective chair even though they had knowledge that the chair was not safe. Certainly, the issue whether the defendant's acts or omissions in this case constitute medical negligence is within a jury's common knowledge and experience and, therefore, expert testimony is not necessary.

The defendant, nevertheless, relying upon our decision in Perdieu, argues that the plaintiff was required to establish the applicable standards of care and deviations therefrom with expert testimony. We disagree with the defendant's argument.

In Perdieu, we held that a plaintiff in a medical negligence action must produce expert testimony to establish: that a physician failed to supervise a resident physician; that a physician breached the standards of care by failing to timely diagnose an injury; that a nursing home was negligent in failing to attend, restrain, assist, diagnose, examine, and treat an inpatient; and that the nursing home was negligent in its failure to implement a care plan for the patient. We held that the plaintiff was required to present expert testimony to establish a prima facie case of negligence because these issues were not within the common knowledge and experience of

9

lay jurors. 264 Va. at 421-22, 568 S.E.2d at 711. Unlike the standard of care issues that this Court discussed in <u>Perdieu</u>, in the appeal before this Court, the issue of the defendant's acts of medical negligence regarding the defective chair is quite simple and within the common knowledge and experience of a lay jury.

IV.

Accordingly, we will reverse the judgment of the circuit court, and we will remand this case to the circuit court for a trial on the merits.

<u>Reversed and remanded</u>.