COURT OF APPEALS OF VIRGINIA

Present: Judges Malveaux, Fulton and White
Argued at Salem, Virginia

UNPUBLISHED

REBECCA ANN STOOTS, ADMINISTRATOR
 OF THE ESTATE OF CALVIN HARMON STOOTS
                                                            MEMORANDUM OPINION* BY
v.      Record No. 1999-23-3                             JUDGE JUNIUS P. FULTON, III
                                                              FEBRUARY 25, 2025
MARION LIFE SAVING CREW, INC.

FROM THE CIRCUIT COURT OF SMYTH COUNTY
David B. Carson, Judge Designate

Mary Lynn Tate (Tate Law PC, on briefs), for appellant.

Johneal M. White (Logan Bartley; Glenn Robinson Cathey Skaff &
White, PLC, on brief), for appellee.


Marion Life Saving Crew, Inc. (MLSC) provides emergency medical and transport

services in Smyth County, Virginia.[1]  In February 2014, MLSC Emergency Medical Technicians

(EMTs) responded to the home of Calvin Stoots ("Calvin"), where they found him in medical

distress.  The EMTs were given a copy of Calvin's advance medical directive ("medical

directive").  After a cursory review, the EMTs concluded—erroneously—that the medical

directive was a "Do Not Resuscitate order" (DNR).  Acting under that mistaken interpretation,

the EMTs withheld most emergency medical interventions while transporting Calvin to the

hospital, and he died.

---

* This opinion is not designated for publication.  See Code § 17.1-413(A).

[1] MLSC is also known as Marion Fire-EMS.  We refer to it as MLSC, its designation at
the time of the events discussed in this opinion.

Calvin's sister, Rebecca Ann Stoots ("Stoots"), sued in her capacity as administrator of Calvin's estate, alleging that "[t]he reckless, wanton, negligent and grossly negligent conduct of MLSC [and others] was the direct and proximate cause of the premature death of [Calvin] by depriving him of a substantial chance of survival." On October 17, 2023, the trial court dismissed Stoots' claim with prejudice for "lack of a certifying expert, pursuant to" Code § 8.01-20.1, which requires that before service of a complaint involving medical malpractice, the plaintiff secure a "written opinion signed by [an] expert witness that, based upon a reasonable understanding of the facts, the defendant . . . deviated from the applicable standard of care and the deviation was a proximate cause of the injuries claimed." Stoots appeals, and we affirm.

BACKGROUND

This case was previously appealed to the Virginia Supreme Court, and where applicable we recite the facts as reported by that Court. The Supreme Court affirmed the judgment of the trial court that the individual EMTs involved were immune from liability for Calvin's death per Code § 8.01-225(A)(5), a provision of Virginia's Good Samaritan statute. *See Stoots v. Marion Life Saving Crew, Inc.*, 300 Va. 354, 363-64, 367-70 (2021) (*Stoots I*). But the Court reversed the trial court's ruling insofar as applicable to MLSC and remanded the case for further proceedings. *Id.* at 369-70 & n.13. The trial court completed those further proceedings and now the case comes to us on appeal.[2]

"MLSC is a nonprofit entity qualified under § 501(c)(3) of the Internal Revenue Code, 26 U.S.C. § 501(c)(3), whose primary purpose is to provide organized lifesaving and first aid

---

[2] "[T]he General Assembly recently expanded the jurisdiction of this Court." *Russell v. Commonwealth*, 79 Va. App. 618, 623 (2024). At the time Stoots filed her initial appeal, jurisdiction over such actions was with the Supreme Court. But while her appeal before that Court was pending, the General Assembly enacted legislation expanding the jurisdiction of the Court of Appeals to include most civil matters appealed from circuit court, which became effective on January 1, 2022. *See* Code § 17.1-405(A)(3).

- 2 -

services for Smyth County, Virginia." *Id.* at 358. MLSC operated through a "single salaried employee and volunteer crew members." *Id.* It billed insurance plans and individuals for its services so "it does not engage in any collection activities for those unable to pay." *Id.*

On February 9, 2014, Calvin began having trouble breathing at home, becoming unresponsive. *Id.* at 358-59. Fearing that Calvin was suffering from ketoacidosis[3] related to his diabetes, Stoots called 911 for emergency assistance. *Id.* at 359. Two MLSC EMTs responded. *Id.* Stoots asked the EMTs "to take Calvin to the hospital and render care," giving them a Virginia Advance Directive for Health Care (the "Advance Directive"), naming her as Calvin's medical agent and authorizing her to request treatment on his behalf. *Id.*

One of the EMTs briefly examined the Advance Directive. *Id.* Observing that the second page of the Advance Directive stated, "no extraordinary methods," the EMT "concluded that Calvin was 'DNR,'" despite later admitting that he had not had "time to fully read" it. *Id.* Instead, the EMT returned the Advance Directive to Stoots, saying "[w]e got to go." *Id.* "Contrary to [the EMT's] interpretation of the Advance Directive, the second page d[id] not say 'no extraordinary methods' anywhere." *Id.* "Stoots told [the EMTs] that Calvin was not 'DNR' and that, as his medical agent, she wanted him to be treated." *Id.* at 360.

The EMTs "loaded Calvin into the ambulance," "connected him to oxygen," and "drove to the hospital in a non-emergency fashion (i.e., without lights and sirens and stopping to adhere to all traffic signals along their route)," stopping along the way to pick up another EMT qualified to "provide Advanced Life Support Services." *Id.* Calvin died en route to the hospital, where on arrival the EMTs informed emergency room staff "that no attempt to resuscitate Calvin was made because he [was DNR]." *Id.*

---

[3] "Diabetic ketoacidosis is a condition where high levels of acid accumulate in the blood and occurs when the body does not have enough insulin to manage glucose levels." *Brazil v. Janssen Rsch. & Dev. LLC*, 196 F. Supp. 3d 1351, 1354 (N.D. Ga. 2016).

Stoots sued MLSC and the EMTs in 2016, alleging that their "reckless, wanton, negligent and grossly negligent conduct . . . was the direct and proximate cause of the premature death of [Calvin]." *Id.* (alterations in original). The EMTs and MLSC asserted, as relevant here, statutory immunity under Code § 8.01-225, Virginia's Good Samaritan Act. *Id.* at 361-63. "In a letter opinion, the circuit court found that the [EMTs] were 'clearly negligent, and probably grossly negligent' in failing to thoroughly read the Advance Directive." *Id.* at 361. Nonetheless, the trial court "ruled that they were absolutely immune from liability under Code § 8.01-225(A)(5) because they rendered emergency care in good faith and were not compensated for the care they provided within the meaning of the statute." *Id.* Relying on *Linhart v. Lawson*, 261 Va. 30, 34 (2001), the trial court further "ruled that MLSC was immune from liability because the [EMTs] were immune from liability."[4] *Id.*

Stoots appealed to the Supreme Court. *Id.* The Supreme Court affirmed as to the individual EMTs. *Id.* at 370. But as to MLSC, the Court reversed, finding the record "insufficient to determine whether the immunity afforded by Code § 8.01-225 applies to MLSC." *Id.* at 369-70. "MLSC billed and was paid by Calvin's insurance company," but, the Court noted, "the record is silent as to the nature of the bill or the subsequent payment," preventing the court from "presently determin[ing] whether the payment was compensation for services

---

[4] *Linhart* states that "[t]he common law principle that the liabilities of principals and agents are coterminous is not applicable when altered by the General Assembly." 261 Va. at 34 (citing *Schwartz v. Brownlee*, 253 Va. 159, 166 (1997)). Applying this principle, the trial court wrote that "unless the common law principle that liabilities of principals and agents are coterminous is altered by statute, they are coterminous," and "[n]othing in this statute alters this principle." "Accordingly," the trial court concluded, "since the individual squad members are immune, MLSC is also immune." On review, the Supreme Court faulted the trial court's reliance on *Linhart*. The Supreme Court noted "that *Linhart*, the case cited by the circuit court, involved the General Assembly's abrogation of sovereign immunity for the principal but not the agent." *Stoots I*, 300 Va. at 369 n.12 (citing *Linhart*, 261 Va. at 34). But "[a]s the present case does not involve a similar abrogation of immunity," the Court continued, "that case is inapposite and the circuit court's reliance on it was misplaced." *Id.*

- 4 -

rendered or reimbursement for MLSC's expenses." *Id.* at 369. *See* Code § 8.01-225(E)(v) ("'[C]ompensation' shall not be construed to include . . . expenses reimbursed to any person providing care or assistance pursuant to this section."). The Court "reverse[d] the circuit court's judgment with regard to MLSC and remand[ed] the case for further proceedings," *Stoots I*, 300 Va. at 370, instructing the circuit court, as relevant to the present appeal, to determine "whether the alleged acts of negligence lay within the range of a jury's common knowledge and experience such that [Stoots] was not required to comply with the expert certification requirement of Code § 8.01-20.1," *id.* at 370 n.13.

On remand, the trial court heard argument on August 25, 2023, on a motion by Stoots to file an amended complaint; MLSC's motion for summary judgment on the expert certification issue; MLCS's motion for summary judgment on punitive damages; and Stoot's objection to MLSC's motion *in limine*. The trial court explained its rulings on these issues in an opinion letter on September 14, 2023, and entered a final order on October 17, 2023. *See Stoots v. Marion Life Saving Crew, Inc.*, No. CL16-187, 2023 Va. Cir. LEXIS 191 (Smyth Sept. 14, 2023) (*Stoots II*). The trial court denied Stoots' motion to amend her complaint, "find[ing] it important that more than nine years passed since the event giving rise to this case, more than seven years passed since [Stoots'] initial filing, more than five years passed since [Stoots] deposed Defendant's witnesses," and over fifteen months had elapsed between the Supreme Court's ruling on the trial court's original final order (*Stoots I*) and Stoots' motion to amend her complaint.[5] *Id.* at *3. "These delays [we]re particularly concerning," the trial court continued, "where there is no valid rationale for it, such as the discovery of new evidence." *Id.* "[A]ll additional facts and all additional claims [Stoots] s[ought] to assert were known at the time of the

---

[5] The trial court had taken the motion *in limine* under advisement at the August 25, 2023 hearing, and the trial court's ruling rendered that motion moot.

initial filing in 2016," the trial court noted, and she "d[id] not provide any reason, or good cause, such as newly discovered evidence, why [she] . . . s[ought] to amend her complaint in 2023." *Id.* at \*3-4. MLSC, "on the other hand, h[ad] established that it would be prejudiced by the amendment," the trial court found. *Id.* at \*4.

The trial court then turned to MLSC's motion for summary judgment on the certification issue. Stoots "concede[d] that she did not retain an expert pursuant to" Code § 8.01-20.1. *Id.* Relying on *Beverly Enterprises-Virginia Inc. v. Nichols*, 247 Va. 264 (1994),[6] Stoots argued that "an expert [wa]s not required in this case because the alleged negligence of [MLSC's] employees [wa]s within the jury's common knowledge and experience." *Id.* Although "recogniz[ing] the exception to the expert certification requirement," the trial court "d[id] not find that the exception applies in this case." *Id.* at \*4-5. "[Stoots] argue[d] it is simple and easy to distinguish between a do-not-resuscitate order and an advanced medical directive," the trial court noted. *Id.* at \*5. "In a vacuum, that may be true," the trial court conceded, "but that is not dispositive of the issue of whether an expert is needed here." *Id.* The trial court found that Stoots could not "avoid the expert certification requirement because the alleged acts of negligence are not clearly within the jury's common knowledge and experience," *id.*, and that referring to the question of whether the EMTs' failure to make further efforts to resuscitate Stoots deprived him of the chance to survive his medical emergency stated that "incorrectly interpreting an advanced medical directive and then linking that failure to loss of chance [to survive] or wrongful death is not an issue within a jury's common knowledge and experience," *id.* "There are all sorts of issues in this case that require an expert," the trial court wrote, including the question of whether Calvin would have survived even if the EMTs had correctly

---

[6] "In certain rare instances . . . expert testimony is unnecessary because the alleged act of negligence clearly lies within the range of the jury's common knowledge and experience." *Beverly*, 247 Va. at 268.

interpreted the Advance Directive. *Id.* "Because . . . [Stoots] . . . failed to certify an expert as required[,] and this case does not fit within the exception to that requirement," the trial court dismissed Stoots' complaint with prejudice. *Id.* at *6. Stoots timely appealed, raising one assignment of error: That the trial court erred in granting summary judgment because of her failure to designate an expert witness per Code § 8.01-20.1.

ANALYSIS

Under Code § 8.01-20.1, "[e]very motion for judgment . . . in a medical malpractice action, at the time the plaintiff requests service of process upon a defendant . . . shall be deemed a certification that the plaintiff has obtained from an expert witness" a signed, written opinion "that, based upon a reasonable understanding of the facts, the defendant for whom service of process has been requested deviated from the applicable standard of care and the deviation was a proximate cause of the injuries claimed." The statute provides further, however, that "[t]his certification is not necessary if the plaintiff, in good faith, alleges a medical malpractice action that asserts a theory of liability where expert testimony is unnecessary because the alleged act of negligence clearly lies within the range of the jury's common knowledge and experience." *Id.* If a plaintiff fails to comply with the expert certification requirement, the court "may dismiss the case with prejudice." *Id.*

Stoots does not contest Code § 8.01-20.1's applicability to her claim. Instead, she asserts that she did not need an expert witness because "the alleged act of negligence clearly lies within the range of the jury's common knowledge and experience." Stoots reminds us that when Calvin's heart and breathing stopped in the ambulance en route to the hospital, MLSC's EMTs made no effort to resuscitate him because they were under the mistaken belief that he was DNR and that this misunderstanding was due to their own negligent failure to properly read and interpret the Advance Directive. "A DNR ends all treatment including CPR and other resuscitation," she argues, and therefore "[a] DNR ends survival." "The [EMTs'] false DNR declaration" therefore "destroyed any

possibility of [Calvin's] survival," she argues, and "[i]t does not require an expert to know that if he does not arrive at the hospital with a beating heart and breathing, no other intervention matters."

The Supreme Court has "stated on many occasions that issues involving medical negligence often fall beyond the realm of the common knowledge and experience of a lay jury" and that "in most instances expert testimony is required to assist a jury." *Coston v. Bio-Med. Applications of Va., Inc.*, 275 Va. 1, 5 (2008). "Expert testimony is usually necessary to establish the applicable standards of care, a deviation from those standards of care, and that such deviation was a proximate cause of a plaintiff's damages." *Id.*

Only "in . . . rare circumstances" is expert testimony "not necessary in a medical negligence case because the alleged acts of negligence clearly lie within the range of the jury's common knowledge and experience." *Id.* For example, expert testimony was not necessary to establish that nursing home employees were negligent when they left "a tray of food with an unattended patient who had a history of choking and who was unable to eat without assistance." *Beverly*, 247 Va. at 269. Nor was an expert necessary to prove that the same patient's death was caused by that negligence when he "died as a result of a mechanical asphyxiation from a bolus of food." *Id.* As the Supreme Court has subsequently explained, however, circumstances like those in *Beverly*, where an expert is not necessary, are "unique."

But Stoots asserts that this case falls within the exception excusing the certification of an expert where "the alleged act of negligence clearly lies within the range of the jury's common knowledge and experience." *Id.* She reminds us that when Calvin's heart and breathing stopped in the ambulance en route to the hospital, MLSC's EMTs made no effort to resuscitate him because they were under the mistaken belief that he was DNR and that this misunderstanding was due to their own negligent failure to properly read and interpret the Advance Directive. "The [EMTs'] false DNR declaration" therefore "destroyed any possibility of [Calvin's] survival," and "[i]t does

not require an expert to know that if he does not arrive at the hospital with a beating heart and breathing, no other intervention matters," she argues. "[I]n a death case, if a defendant physician, by action or inaction, has destroyed any substantial possibility of the patient's survival, such conduct becomes a proximate cause of the patient's death." *Brown v. Koulizakis*, 229 Va. 524, 532 (1985). To be sure, "[i]f there was any substantial possibility of survival and the defendant has destroyed it, he is answerable." *Whitfield v. Whittaker Mem'l Hosp.*, 210 Va. 176, 184 (1969).

It is true that MLSC's EMTs were negligent: the trial court previously "found that the [EMTs] were 'clearly negligent, and probably grossly negligent' in failing to thoroughly read the Advance Directive," *Stoots I*, 300 Va. at 361, and the Supreme Court acknowledged in its previous review of this case that "it is undisputed that the [EMTs] committed a grave mistake in failing to evaluate the Advance Directive more thoroughly," *id.* at 367. But the question before us is not whether the EMTs were negligent in their reading and interpretation of the Advance Directive, or whether MLSC can be held liable for damages caused by their negligence. Rather, the issue before us is, as alleged in her complaint, whether their failure to provide "any therapeutic treatments, including resuscitation drugs, IV solution, chest compressions, ambu bagging or any other treatment," in light of Calvin's diabetic ketoacidosis, destroyed his chance of survival. And further, whether Calvin could have survived his underlying medical emergency even had resuscitative treatment been timely and effectively administered. Given the various types of therapeutic interventions allegedly withheld by the EMTs, we cannot conclude that a lay jury would possess the technical knowledge necessary to determine whether those interventions would have been efficacious and led to Calvin's survival.

Such a calculus was not "within the common knowledge and experience of a jury." *Beverly*, 247 Va. at 269. Despite what some may believe, "under the best of circumstances CPR is not always effective," *Gianechini v. City of New Orleans*, 410 So. 2d 292, 298 n.8 (La. Ct. App. 4 Cir.

1982), even when "properly performed," *id.* at 298. And in some circumstances, CPR may be particularly ineffective. *Cf. Murphy v. Wheeler (In re Warren)*, 858 S.W.2d 263, 264-66 (Mo. Ct. App. 1993) (demonstrating physician testimony that a patient's "'debilitating illnesses would further cause CPR to be futile'" and that she "would not be able to survive CPR"). In other words, the EMTs' failure to apply CPR or other therapeutic efforts only "destroyed [a] substantial possibility of [Calvin]'s survival" *if he had a substantial possibility of surviving the underlying condition causing his medical distress, in this case, diabetic ketoacidosis*. This is a question that "fall[s] beyond the realm of the common knowledge and experience of a lay jury," for which the assistance of "expert testimony is required." *Coston*, 275 Va. at 5. Stoots herself even admitted as much in discovery below. Presented with an interrogatory asking her to "state all facts supporting [her] allegation . . . that [Calvin] had a substantial chance of survival," Stoots answered that Calvin "was still breathing and his heart was still beating upon the [EMTs'] arrival [at his residence]" and that "[s]he believe[d] he had a reasonable opportunity to survive." "However," she continued, "*this determination requires a medical conclusion she is not qualified to make. This issue will be dealt with by plaintiff's experts*." (Emphasis added).

## CONCLUSION

For the foregoing reasons, the trial court's judgment is affirmed.

*Affirmed.*