**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 12-4957

UNITED STATES OF AMERICA,

               Plaintiff - Appellee,

     v.

MOHAMMED KEITA, a/k/a Mohamed Keita,

               Defendant - Appellant.

Appeal from the United States District Court for the District of Maryland, at Greenbelt. Alexander Williams, Jr., District Judge. (8:12-cr-00200-AW-1)

Argued: October 31, 2013         Decided: February 6, 2014

Before NIEMEYER and WYNN, Circuit Judges, and Louise W. FLANAGAN, United States District Judge for the Eastern District of North Carolina, sitting by designation.

Affirmed by published opinion. Judge Wynn wrote the opinion, in which Judge Niemeyer and Judge Flanagan joined.

**ARGUED**: Marc Gregory Hall, LAW OFFICE OF MARC G. HALL, P.C., Rockville, Maryland, for Appellant. Sujit Raman, OFFICE OF THE UNITED STATES ATTORNEY, Greenbelt, Maryland, for Appellee. **ON BRIEF**: Rod J. Rosenstein, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.

WYNN, Circuit Judge:

A federal jury convicted Defendant Mohammed Keita of various charges related to credit and debit card fraud. Defendant appeals, arguing that the district court: should have dismissed the government's case based on the Speedy Trial Act; erred in allowing certain business records into evidence; and miscalculated the loss at sentencing. For the reasons that follow, we reject Defendant's arguments and affirm.

I.

On January 31, 2012, pursuant to a search warrant based on a credit card fraud investigation, federal agents searched Defendant's residence. There, they seized laptop computers containing stolen credit card information, credit and debit cards bearing Defendant's name but re-encoded with stolen credit card information, numerous credit card receipts, and a device for re-encoding credit cards. That same day, the agents arrested Defendant.

On February 10, 2012, with Defendant's consent, the government moved for a continuance of the thirty-day time period to file an indictment under the Speedy Trial Act, 18 U.S.C. §§ 3161-3174, stating that the parties were engaged in plea negotiations. The district court granted the motion and extended the deadline for filing an indictment through March 15,

2

2012. The court later granted a second consent motion seeking a continuance to April 5, 2012, because "an on-going grand jury investigation and plea discussions are being conducted . . . ." J.A. 27. Plea negotiations ultimately failed, and Defendant was indicted on April 9, 2012, for three counts of access device fraud, three counts of aggravated identity theft, one count of possession of counterfeit access devices, and one count of possession of device-making equipment.

At trial in August 2012, the jury viewed store surveillance videos and still photographs of Defendant using "cloned" credit and debit cards. Loss prevention investigator Robert Fogel explained that

> [a] cloned credit card is a copy of someone's credit card . . . . [B]asically somebody has skimmed your credit card or taken your credit card and run it through a skimmer, taken the information off the magnetic strip on the back. Then they . . . transfer that information onto a blank credit card, onto the magnetic strip, and then they have a copy or a clone of your credit card and they can go out and use it as they wish.

J.A. 174. The government presented evidence that Defendant used the cloned cards to purchase, among other things, thousands of dollars' worth of gift cards and cigarettes. The government's witnesses included loss prevention specialists from two stores where Defendant used the cloned cards, individuals whose credit cards Defendant had cloned, fraud investigators from American Express and Chase Bank, a computer forensic expert who analyzed

3

Defendant's computers, and the lead detective who investigated the case. Defendant called one witness, who testified that the apartment federal agents searched was leased to someone other than Defendant.

The jury convicted Defendant on all counts. At sentencing, the district court determined that "as a conservative matter the government has clearly established $136,838.30 as the amount of the loss here," J.A. 710, and imposed a total sentence of 76 months' imprisonment. Defendant appeals.

## II.

### A.

Defendant first argues that the district court erred in denying his motion to dismiss the indictment based on asserted violations of his rights under the Speedy Trial Act.[1] "We review de novo a district court's interpretation of the [Speedy Trial Act], while we review any of the court's related factual findings for clear error." United States v. Leftenant, 341 F.3d 338, 342 (4th Cir. 2003).

The Speedy Trial Act provides that "[a]ny information or indictment charging an individual with the commission of an

---

[1] Defendant makes no constitutional argument related to delay.

offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges." 18 U.S.C. § 3161(b). An indictment filed in violation of the thirty-day time limit must be dismissed. 18 U.S.C. § 3162(a)(1).

However, certain delays "shall be excluded" when calculating the thirty-day time period. 18 U.S.C. § 3161(h). Two are relevant here: First, "[a]ny period of delay resulting from other proceedings concerning the defendant" shall be excluded. 18 U.S.C. § 3161(h)(1). We have interpreted "other proceedings" to include plea negotiations. Leftenant, 341 F.3d at 344-45. Second, "[a]ny period of delay resulting from a continuance . . . , if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial" shall be excluded. 18 U.S.C. § 3161(h)(7); see Zedner v. United States, 547 U.S. 489, 498-99 (2006) (discussing ends-of-justice continuances, which "permit[] a district court to grant a continuance and to exclude the resulting delay if the court, after considering certain factors, makes on-the-record findings that the ends of justice served by granting the continuance outweigh the public's and defendant's interests in a speedy trial").

In this case, Defendant was arrested on January 31, 2012. Absent any excluded delay, the government was required under the Speedy Trial Act to file an indictment by March 1, 2012. However, the parties twice jointly requested additional time "to discuss a potential resolution of the case." J.A. 24. The district court accordingly granted two continuances: The first secured a continuance until March 15, 2012, and the second secured a continuance until April 5, 2012. Both orders granting the continuances specifically found that the on-going grand jury investigation and plea discussions warranted the continuances and that the resulting periods of delay served the ends of justice. The periods of delay resulting from these continuances are therefore excluded in computing the thirty-day time period. See 18 U.S.C. § 3161(h)(1), (h)(7); Leftenant, 341 F.3d at 344-45.

Applying the exclusions, the speedy trial clock began on February 1 (the day after Defendant's arrest) and stopped on February 10 (when the first continuance was granted). See United States v. Stoudenmire, 74 F.3d 60, 63 (4th Cir. 1996) (noting that the day of the event that triggers the speedy trial clock "is not included in the calculation; the clock begins to run the following day"). It resumed on April 6 (when the second continuance lapsed) and stopped again on April 9 (when the indictment was filed). Thus, a total of twelve non-excluded

6

days elapsed, well within the Speedy Trial Act's thirty-day limit. Consequently, the district court did not err in denying the motion to dismiss based on purported Speedy Trial Act violations.

B.

With his next argument, Defendant contends that the introduction of business records relating to cardholders who did not testify at trial violated his Sixth Amendment right to confrontation. He further argues that those records were irrelevant.

Whereas we generally review the district court's evidentiary rulings for abuse of discretion, United States v. Perkins, 470 F.3d 150, 155 (4th Cir. 2006), when a defendant fails to make a specific and timely objection at trial, our review is restricted to plain error. United States v. Cabrera-Beltran, 660 F.3d 742, 751 (4th Cir. 2011). To prevail under the plain error standard, the defendant must show "there was an error, the error was plain, and the error affected [the defendant's] substantial rights." United States v. Boykin, 669 F.3d 467, 470 (4th Cir. 2012) (citing Fed. R. Crim. P. 52(b) and United States v. Olano, 507 U.S. 725, 731-32 (1993)). The correction of plain error lies within our discretion, which we may exercise if "the error seriously affects the fairness,

7

integrity or public reputation of judicial proceedings, or the defendant [is] actually innocent." Id.

Here, Defendant objected to the business records on hearsay grounds.[2] To preserve a claim that a district court erred in admitting certain evidence, a party must, "on the record: (A) timely object[] or move[] to strike; and (B) state[] the specific ground, unless it was apparent from the context[.]" Fed. R. Evid. 103(a)(1). A "hearsay objection at trial cannot be understood to include a Confrontation Clause objection . . . ." Cabrera-Beltran, 660 F.3d at 751. Because Defendant failed to preserve his objections on Confrontation Clause and relevance grounds, we review the asserted errors for plain error.

The Confrontation Clause states that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]" U.S. Const. amend. VI. In accordance with the Confrontation Clause, "[t]estimonial statements of witnesses absent from trial [are] admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." Crawford v. Washington, 541 U.S. 36, 59 (2004). The Supreme Court has explained that the Confrontation Clause bars only

---

[2] Defendant also objected on grounds of improper authentication, but he does not raise that issue on appeal.

8

testimonial statements because "[o]nly statements of this sort cause the declarant to be a 'witness' within the meaning of the Confrontation Clause." Davis v. Washington, 547 U.S. 813, 821 (2006). The "core class" of testimonial statements includes:

> ex parte in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially, extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions, [and] statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.

Crawford, 541 U.S. at 51-52 (first alteration in original) (quotation marks and citations omitted).

Crucially for this case, "[b]usiness and public records are generally admissible absent confrontation not because they qualify under an exception to the hearsay rules, but because—having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial—they are not testimonial." Melendez-Diaz v. Massachusetts, 557 U.S. 305, 324 (2009). Although exceptions are possible, see id. at 321 (cautioning that business records may be testimonial if "the regularly conducted business activity is the production of evidence for use at trial"), business records are generally not testimonial if they are "created for

9

the administration of an entity's affairs" rather than for "proving some fact at trial." Id. at 324; accord Cabrera-Beltran, 660 F.3d at 752.

Here, Defendant does not challenge the district court's ruling that the admitted evidence fell within the hearsay exception for business records. Rather, Defendant asserts that the business records constitute testimonial statements by the cardholders, whom he had no opportunity to cross-examine. We therefore consider the business records at issue to determine whether they come within Crawford's "core class" of testimonial statements.

At trial, Peter Boresky, the manager of global security for American Express's Mid-Atlantic region, testified that the corporation maintains certain records called common point of purchase reports. The common point of purchase reports are internal documents identifying customer accounts that have been compromised. American Express creates the common point of purchase reports daily as part of its regular business practices and sends them "throughout the global security team throughout the country." J.A. 277. Boresky reviews the common point of purchase reports and other documentation sent to him by American Express analysts to "make a determination whether or not to basically contact law enforcement or to investigate the matter initially by [him]self[.]" J.A. 276. Boresky also

10

authenticated screenprints of American Express customer account records and screenprints of an American Express database system known as the Worldwide Fraud Information System to "identif[y] the account and the amount of fraud being booked on that particular account." J.A. 281. Boresky verified that these records were kept in the course of American Express's regularly-conducted business activities.

Defendant asserts that the business reports contain "statements from the cardholders that the transactions . . . were unauthorized." Appellant's Br. at 16. But that assertion is belied by the record. Indeed, many of the business reports do not mention individual cardholders, let alone contain statements made by cardholders.

In sum, American Express created the reports at issue for the administration of its regularly-conducted business rather than "under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial[.]" Crawford, 541 U.S. at 52 (quotation marks omitted). The business records Defendant challenges are therefore not testimonial, and the district court did not plainly err in admitting them.[3]

---

[3] Defendant's brief suggests that similar Chase Bank records were wrongly introduced at trial. However, the only cardholder Chase Bank identified was Michael Pena, who personally testified (Continued)

Defendant further objects to the business records on relevance grounds, arguing that they were not probative of the aggravated identity theft charges. Additionally, because the business records identified cardholders other than those named in the indictment, Defendant complains that the records, even if relevant, were unfairly prejudicial, because "using evidence of this larger number of uncharged transactions . . . ma[de] [him] look far worse in front of the jury." Appellant's Br. at 19.

As previously explained, Defendant never raised this asserted error at trial, and thus we review only for plain error. In accordance with Rule 403 of the Federal Rules of Evidence, "general prejudice . . . is not enough to warrant exclusion of otherwise relevant, admissible evidence." United States v. Siegel, 536 F.3d 306, 319 (4th Cir. 2008). Instead, "[e]vidence may be excluded under Rule 403 only if the evidence is unfairly prejudicial and, even then, only if the unfair prejudice substantially outweighs the probative value of the evidence." Id. "'Evidence is unfairly prejudicial and thus should be excluded under Rule 403 when there is a genuine risk that the emotions of a jury will be excited to irrational behavior, and this risk is disproportionate to the probative

at trial that he had not authorized the relevant transactions. Defendant thus had the opportunity to cross-examine Pena.

12

value of the offered evidence.'"  Id. (quoting United States v. Williams, 445 F.3d 724, 730 (4th Cir. 2006)).

In this case, the indictment charges Defendant not only with aggravated identity theft (in which the individual victims are identified by their initials), but also with three counts of access device fraud.  To prove the three counts of access device fraud, the government had to show that Defendant "knowingly and with intent to defraud" used an "unauthorized access device[]" to "obtain[] anything of value aggregating $1,000 or more" for each of the three one-year periods charged in the indictment. 18 U.S.C. § 1029(a)(2).  The indictment does not allege that Defendant committed access device fraud by using the credit card number of any particular individual.  Rather, it alleges that Defendant obtained $1,000 or more worth of items in each one-year period using unauthorized access devices.  Thus, even if the business records are not probative of the identity theft charges, they are probative of the access device fraud charges. The American Express records reflecting fraudulent transactions ultimately traced to Defendant were plainly relevant to proving access device fraud and were therefore properly admitted.

Nor was the evidence unduly prejudicial under Rule 403 of the Federal Rules of Evidence.  In light of the substantial evidence presented by the government, which included videotapes and photographs of Defendant using the cloned credit cards, as

13

well as highly incriminating evidence seized from Defendant's laptop computers, we are satisfied that introduction of the business records posed no disproportionate risk of inflaming the passions of the jury to "irrational behavior." Siegel, 536 F.3d at 319. The district court therefore did not plainly err in admitting the business records.

C.

Finally, relying on his position regarding the business records, Defendant asserts that the district court erred in calculating the amount of loss at sentencing. "'[T]he determination of loss attributable to a fraud scheme is a factual issue for resolution by the district court, and we review such a finding of fact only for clear error.'" United States v. Allmendinger, 706 F.3d 330, 341 (4th Cir.) (quoting United States v. Godwin, 272 F.3d 659, 671 (4th Cir. 2001)), cert. denied, 133 S. Ct. 2747 (2013). Factual findings regarding the amount of loss must be supported by a preponderance of the evidence. United States v. Miller, 316 F.3d 495, 503 (4th Cir. 2003). However, "'the loss need not be determined with precision. The court need only make a reasonable estimate of the loss, given the available information.'" Id. (quoting U.S.S.G. § 2F1.1, cmt. n.9).

At Defendant's sentencing, Detective David Hill testified on behalf of the government regarding the loss calculation.

14

Detective Hill created a seven-page spreadsheet detailing Defendant's fraudulent transactions, including the dates, the locations, the credit card numbers used, the amounts charged, and the banks associated with the credit card numbers. Detective Hill noted that videotape surveillance showed Defendant conducting many of the listed fraudulent transactions, and that other losses were traced through the stolen credit card information found on Defendant's laptops. Regardless, each loss attributed to Defendant was ultimately supported by videotape evidence; Detective Hill explained, "[i]f I had no video of the transaction and I could not associate that credit card number with one where we did have [video], then I . . . didn't count it and did not put it on the spreadsheet." J.A. 677. According to these calculations, the actual loss caused by Defendant's conduct was $117,313, and the amount of intended loss, "where [Defendant] swiped a card but it didn't go through," was $19,525.30. J.A. 678. Upon consideration, the district court added together these two numbers and found that "as a conservative matter the government has clearly established $136,838.30 as the amount of the loss here . . . ." J.A. 710.

Defendant does not challenge the evidence of loss presented at sentencing. For reasons already discussed, we reject Defendant's argument that evidence of unauthorized transactions to which no cardholder testified should have been excluded at

15

trial and at sentencing.  Defendant thus fails to show clear error.

## III.

For the reasons discussed above, we affirm the judgment of the district court.

AFFIRMED