**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 21-4029**

UNITED STATES OF AMERICA,

Plaintiff − Appellee,

v.

WALTER MELGAR GOMEZ,

Defendant – Appellant.

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. Kenneth D. Bell, District Judge. (3:20−cr−00318−KDB−DSC−1)

Submitted: February 28, 2023                    Decided: June 1, 2023

Before KING, DIAZ, and QUATTLEBAUM, Circuit Judges.

Affirmed by unpublished opinion. Judge Diaz wrote the opinion, in which Judge King and Judge Quattlebaum joined.

**ON BRIEF:** Brandon R. Roseman, BRANDON ROSEMAN, PLLC, Charlotte, North Carolina, for Appellant. William T. Stetzer, Acting United States Attorney, Anthony J. Enright, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

DIAZ, Circuit Judge:

Walter Melgar Gomez appeals his conviction for illegally reentering the United States following his removal, in violation of 8 U.S.C. § 1326(a). On appeal, Gomez contends that the district court abused its discretion by not inquiring into ethnic bias during voir dire and plainly erred by admitting the testimony and report of an expert fingerprint witness. We affirm.

I.

A.

Gomez, a native of Honduras, first entered the United States in 2015 and was removed soon after. He returned, came to the attention of law enforcement in 2020, and was arrested and charged with illegal reentry in violation of 8 U.S.C. § 1326(a). He pleaded not guilty and went to trial.

The trial took place the day before the November 2020 election, when Gomez argues "the issue of Hispanic immigration was at the forefront of national debate." Appellant's Br. at 6. Gomez asked the district court to question jurors about their views on "Hispanic people coming to the United States." J.A. 10. The court declined, but asked whether jurors had strong opinions about the Department of Homeland Security, Immigration and Customs Enforcement, or legal or illegal immigration. It also asked about jurors' experiences with recent immigrants, the immigration system, and the naturalization process. And it confirmed they could "decide this case based on the facts and the law . . . and not based on any notions of bias, prejudice, or sympathy for either side." J.A. 181.

2

B.

The trial focused on whether Gomez was the individual removed in 2015. The government presented documents from 2015 listing the removed person's name as Walter Melgar-Gomez and his birthdate as August 25, 1997. The documents included a photo of the removed person and his signature. One document contained a right index fingerprint while another had a full fingerprint card with all ten fingers.

Officers who arrested Gomez in 2020 found a Honduran identification card in his wallet. The jury saw the card, which includes the name Walter Melgar Gomez (no hyphen), has a photograph of Gomez, and gives his birthdate as August 28, 1997 (three days later than the date on the 2015 documents). The government also presented a full fingerprint card made during Gomez's 2020 arrest.

The government then offered the testimony and report of Laura Karel, a fingerprint-analysis expert. Karel testified that she had multiple criminal-justice degrees and fifteen years of experience in "tenprint" examination. She noted that she is one of around one hundred certified tenprint examiners in the world and detailed the certification process, which involves eighty hours of board-approved work, letters of endorsement, and a six-hour test.

Karel explained that she uses the ACE-V method, which stands for analysis, comparison, evaluation, and verification. The examiner first *analyzes* whether the print has enough information for use in comparison. She then does a side-by-side *comparison* of two prints and *evaluates* whether the prints were made by the same or different

3

individuals, or if it can't be determined. A second examiner completes the same process to *verify* the first examiner's conclusion.

Gomez didn't object to Karel testifying as an expert, and the court accepted her.

Karel testified that she compared the right index print and tenprint card from 2015 with the tenprint card from 2020 and concluded all three right index prints were "made by the same individual." J.A. 94–95. Her signed report (admitted without objection) likewise concluded that "the fingerprints were made by the same individual." J.A. 136. And another examiner verified her report—the report contains the verifier's initials.

Gomez's attorney probed deeper on the ACE-V method during cross-examination. First, counsel asked about the comparison step. Karel explained that she looks for "different minutia," such as "a ridge that ends or a . . . ridge that goes straight and then []
breaks off into two." J.A. 98. She then marks those distinguishing points and confirms that what she sees on one print "is exactly" what she sees on the other. *Id.* Karel couldn't remember "exactly how many" points she identified in Gomez's case. But she testified that no set number of points is required and explained that she "usually do[es] more than eight." *Id.*

Second, Gomez's attorney asked about the verification step, pressing Karel for the verifier's report. Karel explained that the verifier doesn't prepare a separate report, but "looks at everything that [Karel] did," completes the "ACE portion of the ACE-V" themselves, comes to their own conclusion, and signs off on the original report if they agree with Karel. J.A. 100. Karel confirmed on redirect that the reviewer is also a certified member of fingerprint expert organizations.

4

The jury returned a guilty verdict and the court sentenced Gomez to time served plus four days, followed by a year of supervised release. He was also charged a $100 special assessment.

This appeal followed.

## II.

Gomez argues the district court abused its discretion in not asking his proposed voir dire question about Hispanic immigration. And he claims the district court plainly erred in admitting Karel's expert testimony and report. We consider each in turn.

## A.

Gomez first argues the district court's voir dire questions failed to mitigate the risk that prejudice against Hispanic immigrants would infect his trial—a risk he says was heightened because of the 2020 election.

We review the district court's "refusal to ask requested voir dire questions for abuse of discretion." *United States v. Barber*, 80 F.3d 964, 967 (4th Cir. 1996) (en banc). "A district court abuses its discretion . . . if the voir dire does not provide a reasonable assurance that prejudice would be discovered if present." *United States v. Lancaster*, 96 F.3d 734, 740 (1996) (en banc) (cleaned up).

When issues of race or ethnicity are "inextricably bound up with the conduct of the trial," the court can't "refuse a request for voir dire directed to" a related bias. *Barber*, 80 F.3d at 968. But when race or ethnicity isn't an element of the offense, related to a defense, or otherwise "connected with the resolution of relevant facts," the court abuses its

5

discretion only if "there is a reasonable possibility that prejudice might influence the jury." *Id.* (cleaned up).

The district court acted within its broad discretion during voir dire. Hispanic ethnicity wasn't "inextricably bound up" with Gomez's case. *Id.* Gomez doesn't, for example, argue that he was targeted for prosecution because of his ethnicity. *Cf. Ristaino v. Ross*, 424 U.S. 589, 596–97 (1976) (discussing *Ham v. South Carolina*, 409 U.S. 524 (1973), and explaining that a question on racial bias was required there because the defendant argued officers framed him in retaliation for his civil-rights activities). And there's no suggestion that ethnicity was otherwise connected to the facts of the case, the elements of the illegal-reentry offense, or Gomez's defense. Gomez's argument is simply that jurors might be more likely to convict him of illegal reentry because he is Hispanic.

The Supreme Court rejected a similar argument in *Rosales-Lopez v. United States*, which involved a defendant of Mexican descent who was accused of smuggling other individuals from Mexico into the United States. 451 U.S. 182, 184 (1981). Defense counsel proposed the voir dire question: "Would you consider the race or Mexican descent of [the defendant] in your evaluation of this case?" *Id.* at 185. The trial court declined to ask the question, or any other question "directed specifically to possible racial or ethnic prejudice," but it did ask whether the jurors had "any particular feelings one way or the other about aliens." *Id.* at 185–86.

The Supreme Court found no reversible error, determining that the issues in the case weren't bound up with race or ethnicity. *Id.* at 193. And it held that the trial court's questions about general prejudice towards noncitizens "eliminated . . . any reasonable

6

possibility" that the jurors would be influenced by "undisclosed racial prejudice toward Mexicans" specifically. *Id*. The Court found "no doubt that the jurors would have understood a question about aliens to at least include Mexican aliens." *Id.*

Gomez argues the danger of bias against Hispanic immigrants is heightened in a prosecution for illegal reentry because "the vast majority of enforcement involves Hispanic peoples," and he faults the district court for failing to explicitly ask about this issue. Appellant's Br. at 8. But under the logic of *Rosales-Lopez*, jurors steeped in the political environment Gomez describes would have understood the court's general questions about illegal immigration to include Hispanic immigrants.

The questions the district court asked eliminated "any reasonable possibility" of undisclosed prejudice toward Hispanic immigrants, so the court didn't abuse its discretion in not asking Gomez's additional question. *Rosales-Lopez*, 451 U.S. at 193.

B.

Gomez next argues the district court erred in admitting Karel's expert testimony. Because Gomez didn't object to Karel's expert testimony, we review the court's ruling for plain error. *United States v. Baptiste*, 596 F.3d 214, 223–24 (4th Cir. 2010). Gomez must first establish (1) that an error occurred, (2) that the error was plain, and (3) that the error affected his substantial rights. *Henderson v. United States*, 568 U.S. 266, 272 (2013). Even then, we will exercise our discretion to correct the error only if it "seriously affects the fairness, integrity or public reputation" of the judicial process. *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1905 (2018).

7

Gomez argues Karel's testimony was unreliable (and thus should have been excluded) because she couldn't remember exactly how many points she matched in his case. But we find no error in the admission of Karel's testimony, much less a plain one.

To provide expert testimony, a witness must be "qualified . . . by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. The court must conclude that the expert's "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." *Id.* The expert's opinion must be "based on sufficient facts or data," and it must be "the product of reliable principles and methods," "reliably applied" to the facts of the case. *United States v. Smith*, 919 F.3d 825, 835 (4th Cir. 2019).

Karel met these requirements. She testified to her training, certification, and fifteen years of experience in fingerprint examination. The method she applied, ACE-V, has been recognized by several circuits as sufficiently reliable. *See United States v. Hood*, 846 F. App'x 825, 829 (11th Cir. 2021) (collecting cases); *see also United States v. Crisp*, 324 F.3d 261, 266–70 (4th Cir. 2003) (declining to exclude fingerprint evidence, but not specifically discussing the ACE-V method).

As Karel explained, the International Association for Identification, the "oldest and largest forensic organization in the world," previously determined that "there was no need to have an exact number of points in order for [an ACE-V] comparison to be concluded." J.A. 88, 98. Karel also described in detail how she applied the ACE-V method in Gomez's case.

8

The jury was free to consider that Karel couldn't remember exactly how many points she matched in Gomez's case when weighing her testimony. Gomez had an opportunity for "[v]igorous cross-examination," one of the "traditional and appropriate means of attacking shaky but admissible evidence." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993). And the district court instructed the jury that they weren't required to accept Karel's opinion. It directed them to assess her credibility based on her training, experience, and whether her "opinions were based on adequate information and sound reasoning and good judgment." J.A. 92.

We find no error (plain or otherwise) in the district court's decision to admit Karel's testimony. But even if there were an error, Gomez can't demonstrate an impact on his substantial rights. Gomez would need to show "a reasonable probability that, but for the error," he would have been acquitted. *Greer v. United States*, 141 S. Ct. 2090, 2096 (2021).

Excluding the fingerprint evidence, the jury still had an ample basis to conclude Gomez was the same person removed in 2015. The government presented a Honduran ID recovered from Gomez in 2020 and immigration forms from the individual removed in 2015. Those exhibits reveal a similar photo and a near-perfect match on both name and birthdate.

C.

Gomez's final argument is that the district court erred in admitting Karel's fingerprint-analysis report, in violation of the rules against hearsay and the Confrontation Clause. Gomez didn't object to the admission of Karel's report at trial, so we again review

9

for plain error. *Baptiste*, 596 F.3d at 223–24 (evidentiary rulings); *United States v. Keita*, 742 F.3d 184, 189 (4th Cir. 2014) (Confrontation Clause).

Karel's report was initialed by the individual who completed the verification step. But the verifier didn't testify, and Gomez asserts that the initials allowed Karel "to bolster her credibility to the jury" by implying a second expert had confirmed her findings. Appellant's Br. at 16.

The government says the initials were offered for their effect on Karel (informing her that the required verification step had been completed), rather than for their truth (that the reviewer had confirmed Karel's findings). And it points out that much of Karel's testimony on verification took place during cross-examination; the government limited its own questions to confirming that Karel complied with the ACE-V method.

The government is correct that neither the Confrontation Clause nor the rules against hearsay bar the use of statements "for purposes other than establishing the truth of the matter asserted." *United States v. Jordan*, 952 F.3d 160, 167–68 (4th Cir. 2020). And a defendant in a criminal case "cannot complain of error which he himself has invited." *United States v. Neal*, 78 F.3d 901, 904 (4th Cir. 1996).

Had Gomez preserved this challenge, we would face an issue about which there is some disagreement among the state courts. Several state courts have found evidence of fingerprint verification to be inadmissible hearsay under their evidentiary rules. *See, e.g.*, *People v. Yancy*, 858 N.E.2d 454, 458 (Ill. App. 2005) (testimony that "quality assurance department agreed with [expert witness's] identification" was improper hearsay because it was "offered to prove the truth of the matter that it asserted: that the quality assurance

10

department also found that the . . . prints were defendant's"); *State v. Wicker*, 832 P.2d 127, 128–29 (Wash. App. 1992) (testimony that identification was verified by another senior technician, as "demonstrated by the presence of her initials on the fingerprint card," amounted to a statement that "the two sets of prints match" and was "classic hearsay"). *But see State v. Quick*, 405 S.E.2d 179, 196 (N.C. 1991) (finding a nonhearsay purpose where expert testified that second examiner's verification was part of standard procedure and informed his opinion that the prints matched).

But we needn't resolve the issue because Gomez can't show an impact on his substantial rights. Aside from his challenge based on Karel's inability to remember the number of points matched—which we have rejected—Gomez doesn't challenge Karel's testimony that all three prints "were made by the same individual." J.A. 136. And again, the government presented significant documentary evidence establishing that Gomez was the individual removed in 2015. So Gomez hasn't shown a "reasonable probability" that the report "affected the outcome" of his trial. *United States v. Marcus*, 560 U.S. 258, 262 (2010).

## III.

We affirm the district court's judgment. And we dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this Court and argument would not aid in our decision.

*AFFIRMED*